## BULLIS v. TOWN OF JACKSON.
### No. 1389.

Court of Appeal of Louisiana.   First Circuit.
Dec. 4, 1934.

G. P. Bullis, of Vidalia, in pro. per.

Chas. Kilbourne, of Clinton, and R. F. Walker, of Baton Rouge, for appellee.

LE BLANC, Judge.

Plaintiff, a practicing attorney at law, residing at Vidalia, La., instituted this suit against the municipal corporation known as the town of Jackson, to recover a fee for services as legal adviser in connection with the floating of a bond issue, the proceeds from the sale of which were to be used in building a gas plant and furnishing natural gas to those of the inhabitants who cared to avail themselves of it.

Plaintiff sets out in his petition that he was employed by the mayor and trustees of the town of Jackson at a meeting legally convened, and by an oral agreement then and there made, for the purpose of preparing all necessary documents for the calling of an election, the promulgation of the results and preparation of the bonds in the event the election carried, for all of which he was to receive a fee of 3 per cent. on the amount of the bond issue which was to be in the sum of $10,000. In addition, he claims that he was called on to perform certain other services in connection with the election itself and also with the compromise or adjustment of a prior contract for the supply of natural gas which some one claimed to have with the town, for all of which, including his expenses which amounted to $50, he avers he is entitled to recover the sum of $200. Of course, he alleges that he performed the services required of him under his contract of employment, that he has earned his fee as well as the amount he claims for extra services, and he accordingly prays for judgment in the sum of $500.

The defendant for answer avers that all negotiations for furnishing natural gas to the people were entered into and had with one G. W. Walker or G. W. Walker & Co. It appears to be the contention of defendant that Walker brought the plaintiff into the negotiations and that they gave assurances that they could secure a supply of natural gas for the town, if and when a bond issue was voted by the people. It is averred that they gave these assurances knowing full well that there existed, at the time, a contract between the town and one B. A. Campbell, under which the latter had the exclusive privilege of supplying natural gas to the town, but that they represented to defendant that the Campbell contract presented no legal obstacle to their supplying the town with gas, which representations were deceptive and untrue. It is finally averred that the ordinances prepared by plaintiff were not legal and were ineffective and of no value to the town, and that as the agreement for the fee claimed by plaintiff was contingent upon his furnishing the town with a supply of natural gas, which he did not, and could not, do, he is not entitled to recover.

The lower court rendered judgment rejecting the plaintiff's demands and dismissing his suit and he has taken this appeal.

Counsel for defendant have, in this court, injected an issue that was not raised in the pleadings. That is, that the contract of employment relied on by plaintiff is invalid in that it was not entered into by virtue of a resolution of the board of trustees of the town as was necessary under the law, much of which is cited in their brief.

On the trial of the case, plaintiff timely objected to the introduction of testimony on the issue, inasmuch as it had not been pleaded as a defense, and protected himself in that respect. The trial judge permitted the testimony to be offered subject to the objection. He did not assign written reasons for judgment and we therefore cannot tell, from the record, which of the defendant's contentions he maintained. We think that the objection was well taken and that defendant should not have been given the opportunity to add an issue that did not appear in the pleadings. The testimony having been received subject to the objection that had been promptly urged, it cannot be said that the pleadings have been enlarged. There is another reason, however, which bars defendant from such defense. The record shows that at a meeting of the board of trustees of the town, held on August 17, 1932, a resolution was adopted by the terms of which the members of the board specifically recognized plaintiff as their special counsel, and requested him to proceed at once to do certain things toward completing the work he was engaged to do in connection with the bond issue. Plaintiff's employment dated back to the month of April, 1932; the resolution of August 17, 1932, was clearly a recognition of that employment and defendant is estopped from further questioning it.

The real controversy in the case is with regard to the work that plaintiff was really employed to do. His contention is that he was only to prepare the necessary ordinances and documents relating to the election, the preparation of the bond issue, and the floating of the bonds, and he maintains that he has performed all of these services. The town, on the other hand, contends that under the contract of employment, plaintiff was not only to attend to the floating of the bond issue, but that he was to secure the town a supply of natural gas as well.

Plaintiff testifies that he and Walker had no connection in business whatsoever; that Walker was employed as engineer by the town of Jackson and he was the one who would secure its supply of gas. He treats as ridiculous the idea that he, as attorney, would have bound himself to such an undertaking. And yet, in a letter which he addressed to defendant on April 16, 1932, in which he confirms the contract under which he claims to have been employed, he volunteers, in addition to the work he was to do on the bond issue, to act as its attorney in a contract with the Interstate Natural Gas Company, "for supply of gas from their pipe line, without additional charge: * * *" Our appreciation of the testimony is that plaintiff, knowing that Walker, who was friendly enough to have recommended him as a competent attorney to the town, had a contract to supply it with gas, and he considered the work in that connection a simple matter. He did this, aware also of the other existing contract, which he did not think at the time could stand in the way. One thing appears to us to be certain, that is, that plaintiff's fee was contingent on the sale of the bonds, and, as the sale of the bonds depended on a supply of gas being first obtained, it follows, that indirectly, at least, plaintiff's fee also depended on the supply of gas being available. No doubt, therefore, he was very much interested in trying to procure that supply, knowing full well that his fee could not be paid unless a supply was furnished, and his interest in that phase of the matter is no better manifested than in his efforts to come to some understanding with Campbell who had the existing contract to furnish gas to the town. His efforts in that direction did not result successfully and apparently he abandoned them, as on July 26, 1932, he wrote a letter to the mayor of the town to the effect that Mr. Campbell had taken "a very haughty attitude" about going into further conference with him, and that he (plaintiff) was turning this over to him (the mayor) to handle. It must be remembered that in his letter of April 16, 1932, in which he confirmed his employment by the town, plaintiff had obligated himself, in addition to his work on the bond issue, to act as attorney for the town in a contract for the supply of natural gas from the pipe line of the Interstate Natural Gas Company, without further charge. Besides, he seemed to have always taken the attitude that the Campbell contract would present no serious legal obstacle in the way of the town obtaining gas through some other contract. The obstacle evidently was harder to surmount than he had anticipated and he made no further advances in the matter. Campbell then took it up where he had left off; the bonds were sold under a new ordinance prepared by him, according

782

to the testimony of Mayor Johnson, and the gas plant was soon thereafter installed.

■ All of the facts and circumstances, as herein outlined, give weight to the testimony of Mayor Johnson who states positively that "in event no gas was secured he (plaintiff) was not to get fee" and that "all of these fees were to be paid out of the funds when the bonds were sold."

We have reached the conclusion that the demands of the plaintiff were properly rejected in the lower court and the judgment appealed from is accordingly affirmed.

ELLIOTT, Judge (dissenting).

According to my appreciation of the facts, Gilbert P. Bullis, plaintiff, should recover $300 under his contract with the town, but not the extra $200 claimed as a quantum meruit for services rendered beyond the contract. This extra service was not rendered as an attorney for the town, but was rendered citizens personally in soliciting support for the gas project. Plaintiff wrote the town a letter, as stated in the majority opinion, in which, among other matters, he says: "I will not expect the town to pay me anything until the bonds are sold. In addition to the bond work, I will act as attorney for the board in a contract with Interstate Natural Gas Co. for supply of gas from their pipe line without additional charge." I do not look on this offer on the part of Bullis to act as attorney for board, in contract with Interstate Natural Gas Company in the effort to get gas from its pipe line, as a personal guarantee that he would get gas for the town from the company mentioned, upon the success of which his fee depended. He did act, as he says he would and did try, but it seems that Interstate Natural Gas Company had entered into a contract with another attorney under which this other attorney had received from the Interstate Natural Gas Company the right to supply gas to the town of Jackson. Bullis called on this other attorney but could not prevail on him to relinquish his right under his contract with Interstate Natural Gas Company, which failure stopped at least temporarily the prospect of early gas. Further legal work was necessary in order to complete the bond work voted by the town which was to pay for the gas. Bullis wrote the necessary papers and sent them to the town, but the town did not use them. It instead entered into arrangements with the other attorney, and with him, as attorney, completed the work of obtaining

the gas, all without notice to Bullis that his employment as attorney and arrangement for fee had been put aside in favor of another attorney on the ground that with this other attorney the town could and did get the gas which it desired from the pipe line passing near the town. My examination of the record leaves me under the impression that the town be required to pay him the sum which it agreed to do at the time he was hired to do the work.

I therefore dissent.